IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA,

v.

JOSE BENITEZ-GARCIA,
ALEJANDRO GARCIA, and
ISIAS PERLA-GRANDOS,

           **Defendants.**

1:08-cr-437-WSD-JFK

## OPINION AND ORDER

This matter is before the Court on Defendant Benitez-Garcia's[1] and Defendant Alejandro Garcia's Objections [120, 121] to the Report and Recommendation ("R&R") of Magistrate Judge King recommending denial of Motions to Suppress filed by defendants Benitez-Garcia, Garcia, and Isias Perla-Grandos (collectively, the "Defendants") [119].[2] The R&R considers the Motion to Suppress Illegally Seized Evidence [72] filed by Benitez-Garcia, the Motion to

---

[1] The R&R and the Indictment refer to the Defendant Benitez-Garcia as "Jose Benitez-Garcia." The Objections refer to the Defendant as "Jose Benites." The Court will, for consistency purposes, use the version of his name in the R&R.

[2] Defendant Garcia moved to adopt Benitez-Garcia's Objections to the R&R [121]. Garcia's Motion to Adopt is granted.

Suppress Illegally Seized Evidence filed by Perla-Grandos [84], and the Motion to Suppress Illegally Seized Evidence filed by Garcia [93]. All three defendants seek to suppress evidence that was seized pursuant to a search of a residence at 1879 Lendl Court, Lawrenceville, Georgia. In the R&R, the Magistrate Judge recommended that the Motions to Suppress be denied.

I.  **STANDARD OF REVIEW**

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject or modify a magistrate judge's report and recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59; Williams v. Wainwright, 681 F.2d 732 (11th Cir. 1982), cert. denied, 459 U.S. 1112 (1983). A district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). This requires that the district judge "give fresh consideration to those issues to which specific objection has been made by a party." Jeffrey S. v. State Bd. of Educ. of Ga., 896 F.2d 507, 512 (11th Cir. 1990) (internal citations omitted). "It is critical that the objection be sufficiently specific and not a general objection to the report." Macort v. Prem, Inc., 208 Fed. App'x 781, 784 (11th Cir. 2006). With respect to those findings and

recommendations to which objections have not been asserted, the Court must conduct a plain error review of the record.  United States v. Slay, 714 F.2d 1093, 1095 (11th Cir. 1983), cert. denied, 464 U.S. 1050 (1984).

## II. BACKGROUND

Defendants seek to suppress evidence seized from the search of a house at 1879 Lendl Court, Lawrenceville, Georgia.  The search was part of a drug trafficking investigation.

During the course of the investigation, information was discovered that indicated a drug trafficking organization in Houston, Texas was using the house at 1879 Lendl Court in Gwinnett County, Georgia in connection with drug trafficking activities.  Law enforcement personnel decided to conduct a "knock and talk" at the home.  Special Agent Julio Alba of the Drug Enforcement Administration ("DEA") testified at the January 13, 2009 hearing on these motions.  He testified that he knocked on the door and it was answered by one of the Defendants.[3] Agent Alba identified himself as an agent with the DEA conducting a drug investigation,

---

[3] Agent Alba testified at the suppression hearing conducted on January 13, 2009, that Benitez-Garcia answered the door.  January 13, 2009 Hearing Transcript ("Tr.") at 55-56.  Defendants Benitez-Garcia and Garcia stated it was Garcia who answered the door.  Tr. at 94, 98.  As discussed below, this distinction is not significant.

and he asked the person who answered the door if he and the law enforcement personnel with him could enter the home.[4] Atlanta Police Department Officer Bryant Burus stated that while he could not hear the specifics of the conversation at the door, there was an exchange between Agent Alba and the person who had answered the door which lasted a few minutes. Tr. at 50. Agent Alba and the other officers present were allowed to enter the premises.[5]

Agent Alba continued the conversation once inside the home.[6] From the foyer of the home agents could see there was little furniture in it, and that there was luggage in the living area from which clothing had been pulled. Agent Alba testified that during the initial conversation, Benitez-Garcia confirmed he lived at the residence. A short time later, defendants Perla-Grandos and Garcia, and a man named Victor Gonzales, exited from rooms in the home and came to the area where Benitez-Garcia was standing. They all acknowledged they lived in the house and

---

[4] Defendant Garcia testified that Agent Alba asked if could "check" the house. Tr. at 99.

[5] The Defendants dispute that anyone "permitted" the agents to enter the house. Tr. at 94, 98-99.

[6] Communications between Agent Alba and the Defendants occurred in Spanish. Tr. at 57. Agent Alba is a native Spanish speaker. Tr. at 65.

4

they identified the rooms in which they lived.[7] Agent Alba testified that each consented to a search of the home by law enforcement personnel.[8] During the search agents found drugs, guns and other contraband. The occupants were arrested[9] and were given <u>Miranda</u> warnings. At all times during this encounter, law enforcement personnel were dressed in DEA or police uniforms and had their weapons holstered. The evidence presented at the January 13, 2009 hearing established the exchanges between Agent Alba and the Defendants were not aggressive or confrontational.

Magistrate Judge King found that the search of the home was conducted

---

[7] Garcia and Perla-Grandos were staying in the same master bedroom in the house. Garcia testified that Agent Alba asked him if he gave consent to search the master bedroom, to which Garcia said there was "no problem." Tr. at 100. Perla-Grandos testified he did not give Agent Alba independent consent to search the master bedroom. Tr. at 106.

[8] Agent Alba testified that each of the Defendants consented to the search. Defendant Perla-Grandos claims he did not consent. Benitez-Garcia and Garcia testified they each consented to the search and the evidence further showed that Garcia shared the same bedroom with Perla-Grandos. Because Garcia had common authority over the bedroom he shared with Perla-Grandos, Garcia's consent to search authorized the search of the master bedroom without requiring Perla-Grandos' independent consent. <u>Georgia v. Randolph</u>, 547 U.S. 103, 120 (2006). When the search was conducted, law enforcement personnel believed each of the occupants of the home had consented to a search.

[9] The facts are more fully set forth in the R&R.

consensually and that the statements made by the Defendants were voluntary and admissible.[10]

Benitez-Garcia and Garcia object to the R&R on the grounds that they, "disagree[] with the [Magistrate Judge's] conclusion as to what initially transpired when law enforcement knocked on the door." Obj. [120] at 1. The testimony of Benitez-Garcia, Garcia, and Perla-Grandos at the suppression hearing was that law enforcement entered the house immediately when the door was opened and then asked for permission to search individual rooms. This testimony differed from that of Agent Alba, who testified that he asked Benitez-Garcia for permission to enter the home before entering, and once in the house requested permission of each Defendant to search the house, which Benitez-Garcia and Garcia (but not Perla-Grandos) granted. The gist of Benitez-Garcia's and Garcia's first objection is that the Magistrate Judge erred in crediting the testimony of Agent Alba over the testimony of Benitez-Garcia, Garcia, and Perla-Grandos.

---

[10] Magistrate Judge King noted in the R&R that Defendants have not moved to suppress any statements they made at or near the search. The Magistrate Judge found statements made, including those before or during the search, were not the subject of a custodial interrogation. No objections have been asserted to this finding, and the Court finds the Magistrate Judge did not commit plain error in reaching this conclusion.

The second enumeration of error is that, "[a]ssuming arguendo that the initial entry was unlawful, the Magistrate concluded that any subsequent search would not be tainted as fruit of the poisonous tree," Obj. at 2, essentially arguing that when the factors from United States v. Delaney, 502 F.3d 1297 (11th Cir. 2007), are applied the Magistrate Judge erred in concluding the subsequent search was constitutionally appropriate. Benitez-Garcia argues that entry into the home without permission coerced the Defendants to give consent to search, thus invalidating it.[11]

The Court reviews these two objections *de novo*. The remainder of the R&R is not objected to and is reviewed for plain error.

## III. DISCUSSION

It is a basic Fourth Amendment principle that warrantless searches and seizures are presumptively unreasonable. United States v. Gonzalez, 71 F.3d 819, 827 (11th Cir. 1996). It is equally well-established that, "[t]he Fourth Amendment, which prohibits only unreasonable searches and seizures by the government, is not implicated by entry upon private land to knock on a citizen's door for legitimate

---

[11] Benitez-Garcia also seems to urge that the number of law enforcement agents at the home, and the fact they wore tactical uniforms, tended to coerce consent to the search of the Defendants' residence.

7

police purposes unconnected with a search of the premises." United States v. Taylor, 458 F.3d 1201, 1204 (11th Cir. 2006). "Knock and talks," as they are called, are consensual encounters and considered legitimate investigative events that may occur at the home of a suspect, or who is believed to have information about an investigation. United States v. Cruz-Mendez, 467 F.3d 1260, 1264 (10th Cir. 2006). It also is a valid strategy to seek an occupant's consent to a search when officers reasonably suspect criminal activity. United States v. Jones, 239 F.3d 716, 720 (5th Cir. 2001), cert. denied, 534 U.S. 861 (2001).

Whether a person "voluntarily gave consent to a search is a question of fact to be determined by the totality of the circumstances." United States v. Blake, 888 F.2d 795, 798 (11th Cir. 1989) (citing Schneckloth v. Bustamonte, 412 U.S. 218, 249-50 (1973)). Whether consent to search is voluntary when given during a "knock and talk" "turns on the show of force exhibited by the police." United States v. Thomas, 430 F.3d 274, 277 (6th Cir. 2005), cert. denied, 549 U.S. 819 (2006). The following factors have been articulated as those which should guide a court in determining if consent to search was an acquiescence to a show of authority by law enforcement or was voluntarily given: threatening presence of police officers, display of weapons, physical touching, use of aggressive language

or tone of voice, prolonged detention of identification, request to accompany officer to police station, interaction in nonpublic place, and absence of other members of the public. United States v. Mendenhall, 446 U.S. 544, 554 (1980).

The Magistrate Judge credited the testimony of the officers at the suppression hearing to determine that consent to enter and search the home was given, and that the scope of the search was constitutionally valid. The Court agrees. The Court's independent review of the evidence presented at the suppression hearing supports that Benitez-Garcia and Garcia expressly consented to the searches of the inside of the house and that they did so voluntarily. The Court also finds that the evidence establishes there was information indicating the residence was associated with drug trafficking activity, and Benitez-Garcia does not challenge that the agents had sufficient investigation justification to conduct the "knock and talk" at Defendants' residence.

The facts also are compelling that the show of force at the knock and talk was reasonable. The Mendenhall factors, when applied, all support that there was little show of force. Other than the fact tactical uniforms were worn by the investigating officials, there was no other indicia of force. Guns were not drawn, there is no evidence of threatening language or raised voices, and no evidence of

physical touching and no other coercive conduct.

The evidence presented at the suppression hearing, when viewed in its totality, including the testimony of the Defendants, shows that Agent Alba knocked on the door at the Lendl Court home. The door was answered, and during a discussion agents either asked to enter the home or to "check" the residence, and they were thereafter allowed in. Magistrate Judge King found not credible the testimony of Benitez-Garcia and Garcia that law enforcement officers entered the foyer of the house without asking for or receiving consent. The Court has reviewed this testimony *de novo* and agrees it is not credible.

The evidence is further that Agent Alba and the Defendants continued their conversation in the foyer of the home and during that conversation at least Benitez-Garcia and Garcia, who both stated they lived at the residence, consented to a search of the home. Both Benitez-Garcia and Garcia admit this. The evidence is further that the exchange between law enforcement personnel and the Defendants was not aggressive or confrontational and there was no overt show of force. The Court thus finds that the consent given to the search was not coerced. The totality of the circumstances supports that the consent to search was freely and voluntarily given, and that the consent was given for a search of the whole house by persons

who had authority to consent to the search of the entire structure.

## IV. CONCLUSION

The Court concludes, based on its *de novo* review of the totality of the evidence in the record, that the "knock and talk" and consent to search were constitutionally permissible. The Court further finds there is no plain error in the Magistrate Judge's R&R to any finding or recommendation to which an objection was not made.

For the foregoing reasons,

**IT IS HEREBY ORDERED** that the Magistrate Judge's Report and Recommendation [119] is **ADOPTED** by the Court, and that Defendant Benitez-Garcia's and Garcia's Objections to the R&R [120, 121] are **OVERRULED.**

**IT IS FURTHER ORDERED** that Defendant Benitez-Garcia's Motion to Suppress Illegally Seized Evidence [72], as adopted by Defendant Garcia [93], and Defendant Perla-Grandos' Motion to Suppress [84] are **DENIED**.

**SO ORDERED** this 29th day of May 2009.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE